1 | DANIEL J. MULLER, SBN 193396
dmuller@venturahersey.com
2 | VENTURA HERSEY & MULLER LLP
1506 Hamilton Avenue
3 | San Jose, California 95125
Telephone: (408) 512-3022
4 | Facsimile: (408) 512-3023

5 | JONATHAN SACK (admitted *Pro Hac Vice*)
jsack@sackandsack.com
6 | SACK & SACK, LLP
70 East 55th Street, 10th Floor
7 | New York, NY 10022
Telephone: (212) 702-9000

Attorneys for Plaintiff Louis Beryl

10 | MITCHELL F. BOOMER, SBN 121441
Mitchell.Boomer@jacksonlewis.com
11 | DONALD P. SULLIVAN, SBN 191080
Donald.Sullivan@jacksonlewis.com
12 | BENJAMIN A. MAINS, SBN 274056
Benjamin.Mains@jacksonlewis.com
13 | JACKSON LEWIS P.C.
50 California Street, 9th Floor
14 | San Francisco, California 94111-4615
Telephone (415) 394-9400
15 | Facsimile: (415) 394.9401

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS BERYL, | Case No.: 3:20-cv-05920-LB |
| Plaintiff, | JOINT PROPOSED PRETRIAL ORDER |
| vs. | Date: October 24, 2022<br>Time: 9:00 a.m. |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, LLC, EARNEST, LLC, and the NAVIENT CORPORATION EXECUTIVE SEVERANCE PLAN FOR SENIOR OFFICERS EFFECTIVE MAY 1, 2014 | |
| Defendants. | |

Plaintiff Louis Beryl and Defendants Navient Corporation, Navient Solutions, LLC, Earnest, LLC and Navient Corporation Executive Severance Plan for Senior Officers, hereby submit their Joint Proposed Pretrial Order:

**(a) <u>A Brief Description of the Claims and Defenses to be Decided</u>**

Mr. Beryl co-founded an online lender called Earnest, Inc. Earnest, Inc. was acquired by Navient Corporation in 2017. After the acquisition, Mr. Beryl was employed as the Chief Executive Officer of a new entity called Earnest LLC. Mr. Beryl was employed pursuant to an employment agreement dated October 4, 2017 ("Employment Agreement"). Defendants terminated Mr. Beryl's employment on January 24, 2018.

In his Complaint, Mr. Beryl asserts claims for severance pursuant to ERISA Section 502(a)(1)(B) [Count One], for Breach of Fiduciary Duties pursuant to ERISA Section 502(a)(3) [Count Two], for Breach of Contract [Count Three], for violation of California Labor Code Section 204 [Count Four], for penalties pursuant to California Labor Code Section 203 [Count Five], and for estoppel [Count Six]. In support of his claims, Mr. Beryl asserts that Navient Corp. did not have cause to terminate his employment as that term is defined by the Navient Corporation Executive Severance Plan for Senior Officers ("the Severance Plan"). Mr. Beryl further asserts, therefore, that he is entitled to collect severance benefits per the terms of the Plan and that he is entitled to additional severance benefits per the terms of the offer letter / employment agreement between him and Navient Corp. dated October 4, 2017.

Defendants assert that they had cause to terminate Mr. Beryl's employment and that, as a result, he is not entitled to benefits under the terms of the Severance Plan or to the other benefits/compensation identified in his October 4, 2017 Offer Letter. Defendants also assert that Mr. Beryl's Count 2 under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), is duplicative of his Count 1 in that he is seeking the payment of benefits instead of "other appropriate equitable relief," and that his purported Count 2, therefore, fails as a matter of law. Finally, Defendants assert that Mr. Beryl's Statement of the Relief Sought is improperly inflated because: (1) Navient Corp. and Mr. Beryl did not reach agreement to change his compensation at any time; (2) Mr. Beryl is miscalculating his benefits under the terms of the Severance Plan; and (3) Mr. Beryl is

misreading and misapplying the terms of the Earnest Long-Term Incentive Plan regarding the granting and vesting of Performance Cash Units.

**(b) <u>A Statement of the Relief Sought</u>**

Mr. Beryl seeks the following relief:

1. Mr. Beryl seeks payment to him of severance benefits under the *Navient Corporation Executive Severance Plan For Senior Officers* in the amount of $887,500.00;

2. Mr. Beryl seeks payment to him of the Supplemental Severance Benefit owed to him pursuant to his Employment Agreement in the amount of $300,000;

3. Mr. Beryl seeks payment to him for the value of the Restricted Stock Units promised to him in his employment agreement and subsequent to the employment agreement in the amount of $1,000,000.00;

4. Mr. Beryl seeks payment to him for the value of the Performance Cash Units promised to him in his employment agreement in the amount of $1,400,000.00;

5. Mr. Beryl seeks payment to him of the value of 24 months of medical, dental, and vision insurance as promised to him in his employment agreement in the amount of $72,000.00; and

6. Mr. Beryl seeks attorneys' fees, penalties, interest, and costs.

**(c)    <u>All Stipulated, Undisputed Facts</u>**

The Parties stipulate to, and do not dispute, the following facts:

1. In 2013, Mr. Beryl co-founded an online student lending company called Earnest, Inc.

2. In November 2017, Navient Corp. acquired Earnest, Inc. for approximately $155 million in cash.

3. Navient Solutions LLC services and collects existing private and federal student loans.

4. Navient Corp. formed Earnest LLC ("Earnest LLC"), which is located in San Francisco.

5. Navient Corp. entered into a written employment agreement with Mr. Beryl ("Employment Agreement") on October 4, 2017. The Employment Agreement is Trial Exhibit 1.

6. The Employment Agreement provided that Mr. Beryl would have the corporate title of Senior Vice President of Navient Solutions, LLC ("NSL") and the CEO of Earnest LLC.

1         7.        The Employment Agreement provided that Mr. Beryl would "report to Tim Hynes ["Hynes"], Navient's Executive Vice President, Consumer Lending."

        8.        The Employment Agreement provided that Mr. Beryl would be paid a base salary at the rate of $300,000 per year.

        9.        The Employment Agreement provided that Mr. Beryl would "receive an equity grant of restricted stock units ["RSUs"] with a grant value of $125,000. The award will be granted within two weeks of the Closing date—provided that you remain employed by Earnest, Navient or any Navient-affiliated company through the grant date—and will be based upon the closing market price of Navient common stock (NAVI) on the grant date."

        10.       The Employment Agreement provided that Mr. Beryl would be "eligible to participate in the Navient Corporation Executive Severance Plan for Senior Officers (the "Severance Plan"). The Severance Plan is Trial Exhibit 17.

        11.       The Severance Plan is governed by ERISA.

        12.       The Severance Plan provides, in part, that upon termination "without cause", "an Eligible Officer will be entitled to receive a severance payment ("Severance Payment") and continuation of medical, dental and vision insurance benefits and outplacement services, all as provided herein . . ."

        13.       Mr. Beryl was an "Eligible Officer" per the terms of the Severance Plan.

        14.       The Severance Plan entitled Mr. Beryl to certain severance payments if Navient Corp. decided to terminate his employment "without cause."

        15.       The Severance Plan defines "For Cause" as follows:

> 2.04. "For Cause" means a determination by the Committee (as defined herein) that there has been a willful and continuing failure of an Eligible Officer to perform substantially his duties and responsibilities (other than as a result of Eligible Officer's death or Disability) and, if in the judgement of the Committee such willful and continuing failure may be cured by an Eligible Officer, that such failure has not been cured by an Eligible Officer within ten (10) business days after written notice of such was given to Eligible Officer by the Committee, or that Eligible Officer has committed an act of Misconduct (as defined below). For purposes of this Plan, "Misconduct" means: (a) embezzlement, fraud, conviction of a felony crime, pleading guilty or nolo contendere to a felony crime, or breach of fiduciary duty or deliberate disregard of the Corporation's Code of Business Code; (b) personal dishonesty of Eligible Officer materially injurious to the Corporation; (c) an unauthorized disclosure of any Proprietary Information; or (d) competing with the Corporation while employed by the Corporation or during the Restricted

Period, in contravention of the non-competition and non-solicitation agreements substantially in the form provided in Exhibit C upon termination of employment.

16. The Severance Plan further provided that, if Mr. Beryl were to be terminated without cause, he would also be entitled to continue to participate in any medical, dental and vision insurance plans generally available to the senior management of the Corporation "[f]or eighteen (18) months (or twenty-four (24) months if the Eligible Officer is the Chief Executive Officer) following the Eligible Officer's Termination Date, the Eligible Officer and his or her eligible dependents or survivors …". (§ 3.02(c).).

17. The Employment Agreement provided that, if Mr. Beryl were terminated without cause, he would receive a "Supplemental Severance Benefit" in the amount of $300,000.00.

18. The Employment Agreement further promised Mr. Beryl that he would participate in the Earnest Long-Term Incentive Plan ("Earnest LTI Plan").

19. Navient Corp. terminated Mr. Beryl's employment on January 24, 2018.

20. When Navient Corp. informed Mr. Beryl of the termination of his employment, it told him that he would not receive severance benefits because Navient Corp. believed that it had cause to terminate Mr. Beryl's employment.

21. Mr. Beryl made a claim for benefits pursuant to the Severance Plan on March 13, 2018.

22. Navient Corp. denied Mr. Beryl's claim for benefits under the Severance Plan on June 7, 2018.

**(d)** **All Disputed Fact Issues To Be Tried**

**Count One - Claims for severance pursuant to ERISA Section 502(a)(1)(B)**

1. Mr. Beryl's contention that, after execution of the Employment Agreement, Mr. Beryl and Navient Corp. agreed that Mr. Beryl's base salary would be increased to $400,000 per year.

2. Navient Corp.'s contention that Mr. Beryl agreed to the terms of the Agreement and Plan of Merger by and among E Parent, Inc.; Elephant Merger Sub, Inc.; Navient Corporation; Earnest Inc.; and Shareholder Representative Services LLC.

3. Navient Corp.'s contention that Mr. Beryl agreed to the terms of the Earnest LLC

Limited Liability Company Agreement.

4. Navient Corp.'s contention that Mr. Beryl agreed to the terms of his October 4, 2017, Offer Letter.

5. Navient Corp.'s contention that Mr. Beryl spent significant time, including the time of others, and resources attempting to negotiate his personal compensation and the financial targets established for Earnest LLC.

6. Navient Corp.'s contention that Mr. Beryl repeatedly missed deadlines for providing a detailed 2018 business plan for Earnest LLC.

7. Navient Corp.'s contention that the proposed 2018 business plans for Earnest LLC that Mr. Beryl submitted in December 2018 contained targets for the company that were materially different from the targets previously agreed to as part of the acquisition of Earnest Inc. by Navient Corp.

8. Navient Corp.'s contention that, as of January 24, 2018, Mr. Beryl had not provided a detailed 2018 business plan for Earnest LLC.

9. Navient Corp.'s contention that Mr. Beryl's actions as Earnest LLC's C.E.O. constituted a willful and continuing failure to substantially perform his duties and responsibilities as Chief Executive Officer of Earnest LLC and that such actions were not curable.

10. Navient Corp.'s contention that Mr. Beryl's actions as Earnest LLC's C.E.O. constituted misconduct under the terms of the Severance Plan.

11. Navient Corp.'s contention that it had cause to terminate Mr. Beryl's employment as the phrase "for cause" is defined by the Parties' agreements.

12. Navient Corp.'s contention that surveys and interviews of Earnest LLC's employees indicated dissatisfaction, disengagement and a lack of confidence in Mr. Beryl's leadership.

13. Mr. Beryl's contention that he appealed the Severance Plan's denial of his claim on August 3, 2018.

14. Mr. Beryl's contention that Navient Corp. and the Severance Plan never responded to Mr. Beryl's appeal of the decision to deny him benefits under the Severance Plan.

15.     Navient Corp.'s contention that Mr. Beryl's Statement of Relief Sought miscalculates the benefits to which he would be entitled under the Severance Plan if he were to prevail on this claim.

**Count Two - Breach of Fiduciary Duties pursuant to ERISA Section 502(a)(3)**

1.      Mr. Beryl's contention that, after execution of the Employment Agreement, Mr. Beryl and Navient Corp. agreed that Mr. Beryl's base salary would be increased to $400,000 per year.

2.      Navient Corp.'s contention that Mr. Beryl agreed to the terms of the Agreement and Plan of Merger by and among E Parent, Inc.; Elephant Merger Sub, Inc.; Navient Corporation; Earnest Inc.; and Shareholder Representative Services LLC.

3.      Navient Corp.'s contention that Mr. Beryl agreed to the terms of the Earnest LLC Limited Liability Company Agreement.

4.      Navient Corp.'s contention that Mr. Beryl agreed to the terms of his October 4, 2017, Offer Letter.

5.      Navient Corp.'s contention that Mr. Beryl spent significant time, including the time of others, and resources attempting to negotiate his personal compensation and the financial targets established for Earnest LLC.

6.      Navient Corp.'s contention that Mr. Beryl repeatedly missed deadlines for providing a detailed 2018 business plan for Earnest LLC.

7.      Navient Corp.'s contention that the proposed 2018 business plans for Earnest LLC that Mr. Beryl submitted in December 2018 contained targets for the company that were materially different from the targets previously agreed to as part of the acquisition of Earnest Inc. by Navient Corp.

8.      Navient Corp.'s contention that, as of January 24, 2018, Mr. Beryl had not provided a detailed 2018 business plan for Earnest LLC.

9.      Navient Corp.'s contention that Mr. Beryl's actions as Earnest LLC's C.E.O. constituted a willful and continuing failure to substantially perform his duties and responsibilities as Chief Executive Officer of Earnest LLC and that such actions were not curable.

10. Navient Corp.'s contention that Mr. Beryl's actions as Earnest LLC's C.E.O. constituted misconduct under the terms of the Severance Plan.

11. Navient Corp.'s contention that it had cause to terminate Mr. Beryl's employment as the phrase "for cause" is defined by the Parties' agreements.

12. Mr. Beryl's contention that he appealed the Severance Plan's denial of his claim on August 3, 2018.

13. Mr. Beryl's contention that Navient Corp. and the Severance Plan never responded to Mr. Beryl's appeal of the decision to deny him benefits under the Severance Plan.

14. Navient Corp.'s contention that surveys and interviews of Earnest LLC's employees indicated dissatisfaction, disengagement and a lack of confidence in Mr. Beryl's leadership.

### Count Three - Breach of Contract

1. Mr. Beryl's contention that, after execution of the Employment Agreement, Mr. Beryl and Navient Corp. agreed that Mr. Beryl's base salary would be increased to $400,000 per year.

2. Mr. Beryl's contention that, in December 2017, the Parties renegotiated the equity grant and Navient Corp. promised Mr. Beryl that he would receive an additional $875,000 worth of Navient Restricted Stock Units.

3. Mr. Beryl's contention that, at the time of his termination, he had 1,400,000 outstanding PCU's per the terms of his Employment Agreement.

4. Navient Corp.'s contention that Mr. Beryl agreed to the terms of the Agreement and Plan of Merger by and among E Parent, Inc.; Elephant Merger Sub, Inc.; Navient Corporation; Earnest Inc.; and Shareholder Representative Services LLC.

5. Navient Corp.'s contention that Mr. Beryl agreed to the terms of the Earnest LLC Limited Liability Company Agreement.

6. Navient Corp.'s contention that Mr. Beryl agreed to the terms of his October 4, 2017, Offer Letter.

7. Navient Corp.'s contention that Mr. Beryl spent significant time, including the time

of others, and resources attempting to negotiate his personal compensation and the financial targets established for Earnest LLC.

8. Navient Corp.'s contention that Mr. Beryl repeatedly missed deadlines for providing a detailed 2018 business plan for Earnest LLC.

9. Navient Corp.'s contention that the proposed 2018 business plans for Earnest LLC that Mr. Beryl submitted in December 2018 contained targets for the company that were materially different from the targets previously agreed to as part of the acquisition of Earnest Inc. by Navient Corp.

10. Navient Corp.'s contention that, as of January 24, 2018, Mr. Beryl had not provided a detailed 2018 business plan for Earnest LLC.

11. Navient Corp.'s contention that Mr. Beryl's actions as Earnest LLC's C.E.O. constituted a willful and continuing failure to substantially perform his duties and responsibilities as Chief Executive Officer of Earnest LLC and that such actions were not curable.

12. Navient Corp.'s contention that Mr. Beryl's actions as Earnest LLC's C.E.O. constituted misconduct under the terms of the Severance Plan.

13. Navient Corp.'s contention that it had cause to terminate Mr. Beryl's employment as the phrase "for cause" is defined by the Parties' agreements.

14. Navient Corp.'s contention that surveys and interviews of Earnest LLC's employees indicated dissatisfaction, disengagement and a lack of confidence in Mr. Beryl's leadership.

15. Navient Corp.'s contention that Mr. Beryl is misreading and misapplying the terms of the Earnest Long-Term Incentive Plan regarding the granting and vesting of Performance Cash Units.

### Count Four - Violation of California Labor Code Section 204

1. Mr. Beryl's contention that, after execution of the Employment Agreement, Mr. Beryl and Navient Corp. agreed that Mr. Beryl's base salary would be increased to $400,000 per year.

2. Mr. Beryl's contention that, in December 2017, the Parties renegotiated the equity

grant and Navient Corp. promised Mr. Beryl that he would receive an additional $875,000 worth of Navient Restricted Stock Units.

3. Mr. Beryl's contention that, at the time of his termination, he had 1,400,000 outstanding PCU's per the terms of his Employment Agreement.

4. Navient Corp.'s contention that Mr. Beryl agreed to the terms of the Agreement and Plan of Merger by and among E Parent, Inc.; Elephant Merger Sub, Inc.; Navient Corporation; Earnest Inc.; and Shareholder Representative Services LLC.

5. Navient Corp.'s contention that Mr. Beryl agreed to the terms of the Earnest LLC Limited Liability Company Agreement.

6. Navient Corp.'s contention that Mr. Beryl agreed to the terms of his October 4, 2017, Offer Letter.

7. Navient Corp.'s contention that Mr. Beryl spent significant time, including the time of others, and resources attempting to negotiate his personal compensation and the financial targets established for Earnest LLC.

8. Navient Corp.'s contention that Mr. Beryl repeatedly missed deadlines for providing a detailed 2018 business plan for Earnest LLC.

9. Navient Corp.'s contention that the proposed 2018 business plans for Earnest LLC that Mr. Beryl submitted in December 2018 contained targets for the company that were materially different from the targets previously agreed to as part of the acquisition of Earnest Inc. by Navient Corp.

10. Navient Corp.'s contention that, as of January 24, 2018, Mr. Beryl had not provided a detailed 2018 business plan for Earnest LLC.

11. Navient Corp.'s contention that Mr. Beryl's actions as Earnest LLC's C.E.O. constituted a willful and continuing failure to substantially perform his duties and responsibilities as Chief Executive Officer of Earnest LLC and that such actions were not curable.

12. Navient Corp.'s contention that Mr. Beryl's actions as Earnest LLC's C.E.O. constituted misconduct under the terms of the Severance Plan.

13. Navient Corp.'s contention that it had cause to terminate Mr. Beryl's employment

as the phrase "for cause" is defined by the Parties' agreements.

14. Navient Corp.'s contention that surveys and interviews of Earnest LLC's employees indicated dissatisfaction, disengagement and a lack of confidence in Mr. Beryl's leadership.

15. Navient Corp.'s contention that Mr. Beryl is misreading and misapplying the terms of the Earnest Long-Term Incentive Plan regarding the granting and vesting of Performance Cash Units.

**County Five - Penalties pursuant to California Labor Code Section 203**

1. Mr. Beryl's contention that, after execution of the Employment Agreement, Mr. Beryl and Navient Corp. agreed that Mr. Beryl's base salary would be increased to $400,000 per year.

2. Mr. Beryl's contention that, in December 2017, the Parties renegotiated the equity grant and Navient Corp. promised Mr. Beryl that he would receive an additional $875,000 worth of Navient Restricted Stock Units.

3. Mr. Beryl's contention that, at the time of his termination, he had 1,400,000 outstanding PCU's per the terms of his Employment Agreement.

4. Navient Corp.'s contention that Mr. Beryl agreed to the terms of the Agreement and Plan of Merger by and among E Parent, Inc.; Elephant Merger Sub, Inc.; Navient Corporation; Earnest Inc.; and Shareholder Representative Services LLC.

5. Navient Corp.'s contention that Mr. Beryl agreed to the terms of the Earnest LLC Limited Liability Company Agreement.

6. Navient Corp.'s contention that Mr. Beryl agreed to the terms of his October 4, 2017, Offer Letter.

7. Navient Corp.'s contention that Mr. Beryl spent significant time, including the time of others, and resources attempting to negotiate his personal compensation and the financial targets established for Earnest LLC.

8. Navient Corp.'s contention that Mr. Beryl repeatedly missed deadlines for providing a detailed 2018 business plan for Earnest LLC.

9.  Navient Corp.'s contention that the proposed 2018 business plans for Earnest LLC that Mr. Beryl submitted in December 2018 contained targets for the company that were materially different from the targets previously agreed to as part of the acquisition of Earnest Inc. by Navient Corp.

10. Navient Corp.'s contention that, as of January 24, 2018, Mr. Beryl had not provided a detailed 2018 business plan for Earnest LLC.

11. Navient Corp.'s contention that Mr. Beryl's actions as Earnest LLC's C.E.O. constituted a willful and continuing failure to substantially perform his duties and responsibilities as Chief Executive Officer of Earnest LLC and that such actions were not curable.

12. Navient Corp.'s contention that Mr. Beryl's actions as Earnest C.E.O. constituted misconduct under the terms of the Severance Plan.

13. Navient Corp.'s contention that it had cause to terminate Mr. Beryl's employment as the phrase "for cause" is defined by the Parties' agreements.

14. Navient Corp.'s contention that surveys and interviews of Earnest LLC's employees indicated dissatisfaction, disengagement and a lack of confidence in Mr. Beryl's leadership.

15. Navient Corp.'s contention that Mr. Beryl is misreading and misapplying the terms of the Earnest Long-Term Incentive Plan regarding the granting and vesting of Performance Cash Units.

### Count Five - Estoppel

1.  Mr. Beryl's contention that, after execution of the Employment Agreement, Mr. Beryl and Navient Corp. agreed that Mr. Beryl's base salary would be increased to $400,000 per year.

2.  Mr. Beryl's contention that, in December 2017, the Parties renegotiated the equity grant and Navient Corp. promised Mr. Beryl that he would receive an additional $875,000 worth of Navient Restricted Stock Units.

3.  Mr. Beryl's contention that, at the time of his termination, he had 1,400,000 outstanding PCU's per the terms of his Employment Agreement.

4. Mr. Beryl's contention that he reasonably relied to his detriment on any alleged promises by Navient Corp. or others.

5. Navient Corp.'s contention that Mr. Beryl agreed to the terms of the Agreement and Plan of Merger by and among E Parent, Inc.; Elephant Merger Sub, Inc.; Navient Corporation; Earnest Inc.; and Shareholder Representative Services LLC.

6. Navient Corp.'s contention that Mr. Beryl agreed to the terms of the Earnest LLC Limited Liability Company Agreement.

7. Navient Corp.'s contention that Mr. Beryl agreed to the terms of his October 4, 2017, Offer Letter.

8. Navient Corp.'s contention that Mr. Beryl spent significant time, including the time of others, and resources attempting to negotiate his personal compensation and the financial targets established for Earnest LLC.

9. Navient Corp.'s contention that Mr. Beryl repeatedly missed deadlines for providing a detailed 2018 business plan for Earnest LLC.

10. Navient Corp.'s contention that the proposed 2018 business plans for Earnest LLC that Mr. Beryl submitted in December 2018 contained targets for the company that were materially different from the targets previously agreed to as part of the acquisition of Earnest Inc. by Navient Corp.

11. Navient Corp.'s contention that, as of January 24, 2018, Mr. Beryl had not provided a detailed 2018 business plan for Earnest LLC.

12. Navient Corp.'s contention that Mr. Beryl's actions as Earnest LLC's C.E.O. constituted a willful and continuing failure to substantially perform his duties and responsibilities as Chief Executive Officer of Earnest LLC and that such actions were not curable.

13. Navient Corp.'s contention that Mr. Beryl's actions as Earnest LLC's C.E.O. constituted misconduct under the terms of the Severance Plan.

14. Navient Corp.'s contention that it had cause to terminate Mr. Beryl's employment as the phrase "for cause" is defined by the Parties' agreements.

15. Navient Corp.'s contention that surveys and interviews of Earnest LLC's

1  employees indicated dissatisfaction, disengagement and a lack of confidence in Mr. Beryl's
2  leadership.
3      16.     Navient Corp.'s contention that Mr. Beryl is misreading and misapplying the terms
4  of the Earnest Long-Term Incentive Plan regarding the granting and vesting of Performance Cash
5  Units.

**(e)    Each Disputed Legal Issue**

1. Mr. Beryl contends that his challenge to the denial of his claim for benefits pursuant to the ERISA Severance Plan (Counts One and Two) should be determined by the Court *de novo* because "a plan administrator's decision is entitled to deference *only* when the administrator exercises discretion that the plan grants as a matter of contract." *Abatie v. Alta Health & Life Ins. Co.* (9th Cir.2006)458 F.3d 955, 963 (*en banc*); *see also, Firestone Tire & Rubber Co. v. Bruch* (1989) 489 U.S. 101, 111

2. Mr. Beryl contends that the Plan administrator's decision should not be given deference because the plan administrator in this case failed to consider and resolve his appeal. *Langlois v. Metropolitan Life Ins. Co.*, 833 F.Supp.2d 1182 (N.D. Cal. 2011) *citing Gatti v. Reliance Std. Life Ins. Co.* (9th Cir.2005) 415 F.3d 978, 985. If a plan administrator does not even consider a claimant's appeal, the administrator has "has forfeited the privilege to apply his or her discretion." *Id.*

3. Defendants contend that Mr. Beryl cannot seek equitable relief under ERISA section 502(a)(3) because ERISA section 502(a)(1)(B) provides him with adequate relief (*e.g.*, the payment of benefits), making the relief requested in response to Mr. Beryl's Count 2 duplicative of, and not an alternative to, his request for relief in response to Count 1. *Wise v. Verizon Commc'ns*, 600 F.2d 1180, 1190 (9th Cir. 2010); *Johnson v. Buckley*, 356 F.3d 1067, 1078 (9th Cir. 2004); *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1528 n. 5 (9th Cir. 1993).

**(f)    The Parties' Stipulations**

The Parties' have not entered into any stipulations pertaining to the trial.

**(g)    The Parties' Estimates of Total Trial Time**

Mr. Beryl provides the following time estimate for his Case in Chief:

| Trial Activity | Time Estimate |
|---|---|
| Opening Statement | 30 minutes |
| Beryl Testimony (w/cross) | 6 hours |
| Brady Testimony (w/cross) | 1.5 hour |
| Hutchinson Testimony (w/cross) | 2 hours |
| Deposition Designations | 1 hours |
| **Total Estimate** | **11 hours** |

Defendants provide the following time estimate for their defense:

| Trial Activity | Time Estimate |
|---|---|
| Opening Statement | 30 minutes |
| Remondi Testimony (w/cross) | 4 hours |
| Hynes Testimony (w/cross) | 6 hours |
| Smith Testimony (w/cross) | 2 hours |
| **Total Estimate** | **12.5 hours** |

(h)   **The Status of Settlement Negotiations**

The Parties attended a mediation in December 2021 with the Honorable Ronald Sabraw of JAMS. Since that time, they have continued to negotiate on a sporadic basis. The parties remain open to settlement discussions and would welcome a court-sponsored settlement conference if that possibility exits.

Dated: September 26, 2022            VENTURA HERSEY & MULLER LLP

By:   /S/ Daniel J. Muller
DANIEL J. MULLER
Attorneys for Plaintiff Louis Beryl

[SIGNATURES CONTINUED ON NEXT PAGE]

| | | |
|---|---|---|
| Dated: September 26, 2022 | | JACKSON LEWIS P.C. |
| | By: | /S/ Donald P. Sullivan |
| | | DONALD P. SULLIVAN |
| | | Attorneys for Defendants |

4861-4664-9909, v. 1