UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| LOUIS BERYL,<br><br>    Plaintiff,<br><br>    v.<br><br>NAVIENT CORPORATION, et al.,<br><br>    Defendants. | Case No. 20-cv-05920-LB<br><br>**ORDER GRANTING ATTORNEY'S FEES AND COSTS**<br><br>Re: ECF No. 114 |

**INTRODUCTION**

Defendant Navient Corporation acquired Plaintiff Louis Beryl's online student-lending company called Earnest, Inc. for $155 million and hired Mr. Beryl and his team to run a new Navient entity called Earnest LLC. After several months, Navient fired Mr. Beryl, who sued for breach of his employment contract and benefits under an executive-severance plan. A jury found for Mr. Beryl on his contract and estoppel claims and awarded him damages: a $400,000 severance, a $400,000 bonus, $1 million in Restricted Stock Units, and $1.3 million in Performance Cash Units (reduced by the court to $350,000).[1] The court awarded him $920,666.33 for benefits due under the ERISA executive-severance plan and waiting-time penalties under California Labor § 203.[2]

---

[1] Verdict – ECF No. 88 at 1–2; Order – ECF No. 128. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Findings of Fact & Conclusions of Law – ECF No. 107.

ORDER – No. 20-cv-05920-LB

Mr. Beryl is entitled to fees and costs under ERISA and the Labor Code. Navient does not challenge his entitlement to fees, but it contends that his hourly rate is too high, he billed too many hours, he should not get a multiplier, and the court's reduction of the jury's award means that the prejudgment interest must be recalculated. The court generally awards the hourly rate, the hours billed, the costs, and a 1.2 multiplier.

## STATEMENT

The plaintiff seeks fees based on the following rates and hours:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Jonathan Sack | 317.05 | $1,200 | $380,460 |
| Daniel Muller | 532.4 | $ 600 | $319,440 |
| Queenie Paniagua | 127.5 | $ 600 | $ 76,500 |
| Total | 976.95 | | $776,400 |
| 5% Reduction | | | ($ 38,820) |
| Total Requested Lodestar | | | $737,580 |

He asks for a multiplier of 1.6 to account for contingency risk, which brings the fee amount to $1,180,128. He seeks prejudgment interest of $1,649,991.54, and costs of $32,581.25.[3]

Of the hourly rates, Navient challenges only Mr. Sack's. Mr. Sack is based in New York, has practiced for thirty-four years, has extensive experience in cases like the one here, and represented Mr. Beryl on a one-third contingency basis. The rates for all lawyers are the rates that they charge their clients and that the clients pay. That said, about ten percent of Mr. Sack's work is billed hourly: most of his practice is on a contingency basis. (Mr. Muller, based in San Jose, charges eighty percent of his work to clients.)[4]

---

[3] Mot. – ECF No. 114 at 8, 14.

[4] Sack Decl. – ECF No. 114-11 at 2 (¶¶ 2–5), 3 (¶¶ 8–9); Muller Decl. – ECF No. 114-1 at 3 (¶ 9).

The plaintiff submitted two declarations to support the hourly rates.[5]

Gregory O'Hara, a partner with Nixon Peabody LLP in San Francisco, has spent his thirty-five-year career in the San Francisco Bay area and has tried, arbitrated, and resolved hundreds of cases. He is familiar with hourly rates in the community, knows that litigators with ten years' or more experience routinely charge and are paid $600 an hour, and knows that senior attorneys with extensive trial experience charge more than $1,200 an hour. Attorneys in his firm charge similar rates, and the clients pay the rates.[6]

Rodney Sorensen has been in private practice for twenty-five years in the San Francisco Bay area, including as a partner in the employment-law department of DLA Piper, the managing partner of the Silicon Valley office of Payne & Fears, and the principal of Sorensen Law Group, P.C. He is familiar with hourly rates in the community, knows that litigators with ten years' or more experience routinely charge and are paid $600 an hour, and knows that senior attorneys with extensive trial experience charge more than $1,200 an hour.[7]

The attorneys also submitted their billing records and itemized costs.[8] And Mr. Muller submitted a supplemental declaration attesting to his need to personally review the documents in the case (3,400 produced by Navient and 5,000 produced by Mr. Beryl).[9]

## ANALYSIS

As the prevailing party in this case, the plaintiff asserts entitlement to fees and costs under ERISA and the California Labor Code.[10] 29 U.S.C. § 1132(g)(1) ("the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"); Cal. Lab. Code § 218.5 ("[i]n any action brought for the nonpayment of wages, . . . the court shall award reasonable

---

[5] The motion references a third declaration by Brian Timmons, but the court does not see it on the docket.

[6] O'Hara Decl. – ECF No. 114-14 at 2 (¶¶ 2–4).

[7] Sorensen Decl. – ECF No. 114-15 at 2 (¶¶ 2–4).

[8] Muller Decl. & Exs.— ECF Nos. 114-1–114-10; Sack Decl. & Exs. – ECF Nos. 114-11–114-13.

[9] Muller Decl. – ECF No. 120-1 at 3 (¶ 4).

[10] Mot. – ECF No. 114 at 9–13.

attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action"). The defendant does not challenge entitlement to fees and costs but contends that (1) the court should deny the fees motion because counsel did not confer to resolve the fees dispute, as required by N.D. Cal. Civ. L.R. 54-5(b), (2) the fees are not reasonable because Mr. Sack's $1,200 hourly rate is too high and should be $800, the time sheets show block billing and inflated hours that should be reduced by thirty percent, and a multiplier is not warranted for this straightforward case, (3) travel, lodging, and electronic-research costs should be disallowed, and (4) the prejudgment interest is too high based on the court's reducing the Performance Cash Units from $1.3 million to $350,000.[11]

The court does not find procedural default under the local rules, awards the hourly rates and the hours billed, applies a 1.2 multiplier, awards the costs, directs the parties to recalculate prejudgment interest within seven days, and directs the parties to submit a proposed form of order within seven days reflecting these amounts.

1. **Procedural Default Under the Local Rules**

Under the local rules, "[c]ounsel for the respective parties must meet and confer for the purpose of resolving all disputed issues relating to attorney's fees before making a motion for award of attorney's fees." N.D. Cal. Civ. L.R. 54-5(a). Then, the party filing the motion must submit a declaration that contains a "statement that counsel have met and conferred for the purpose of attempting to resolve any disputes with respect to the motion or a statement that no conference was held, with certification that the applying attorney made a good faith effort to arrange such a conference, setting forth the reason the conference was not held." N.D. Cal. Civ. L.R. 54-5(b)(1).

Some courts have denied fees request for failure to comply with this requirement. *See, e.g., Gomez v. Braby*, No. 22-cv-00036-PJH, 2022 WL 1655679, at *2 (N.D. Cal. Oct. 31, 2022); *Hernandez v. Caliber Bodyworks LLC*, No. 21-cv-05836-EMC, 2022 WL 2132914, at *4 (N.D. Cal. June 14, 2022). Both were ADA cases, and both denied defense counsel's motions for fees. In

---

[11] Opp'n – ECF No. 119 at 7–14.

*Gomez*, the court relied on the procedural defect but still addressed the appropriateness of fee shifting in a civil-rights case and denied fees on that ground too. 2022 WL 1655679, at *2. In *Hernandez*, the court did not deny fees on the ground of procedural default under the local rules because counsel apologized and tried to comply after she filed the fees motion. 2022 WL 2132914, at *4. Like the *Gomez* court, the *Hernandez* court denied the prevailing defendant fees. *Id.* at *5.

ADA cases pose a different context: courts are reluctant to award prevailing defendants fees in civil-rights cases. In any event, like the attorney in *Hernandez*, counsel here tried to confer after he read the defendant's opposition.[12] That solves the problem sufficiently.

Also, in civil-rights cases, it is not typical for prevailing defendants to seek fees. Conferring under the local rules has a utility. In more typical prevailing-party fees disputes, probably the standard in the local rules, especially Rule 54-5(a), applies to all parties. It's not like the fees motion was a surprise. In fact, the court delayed entering judgment at the parties' request to allow them to queue up post-trial motions at a pace that suited them. That inured to their benefit at least, but not so much to the court's because months passed, and posttrial motions are easier in real time.

Finally, the attorneys on both sides did what good lawyers do: they worked out unnecessary disputes throughout the pretrial and posttrial process. Navient now is appealing, and the fees issue perhaps provides another point of financial leverage. But the court will not knock out the fees motion as a procedural default under the local rules.

### 2. Attorney's Fees

The fees analysis for the federal and state statutes begins with the lodestar. The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992). California also utilizes the lodestar method in determining a fee award. *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 985 (2010); *see also Cavalry SPV I, LLC v. Watkins*, 36 Cal. App. 5th 1070, 1100–01 (2019).

---

[12] Muller Decl. – ECF No. 120-1 at 2 (¶ 2).

Under the federal and state standards, the court can adjust the "presumptively reasonable" lodestar based on factors such as the novelty and difficulty of the case, counsel's skill, and other factors that are not part of the lodestar calculation. *Kerr v. Screen Extras Guild*, 526 F.2d 67, 69–70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington*, 505 U.S. 557; *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001); *Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977).

> In calculating reasonable attorney fees, the court must consider the following factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill necessary to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relations with the client, and (12) awards in similar cases.

*LaFarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1341–42 (9th Cir. 1986).

### 2.1 Reasonable Hourly Rate

The plaintiff asks for an hourly rate of $1,200 for Mr. Sack. Navient counters that the rate should be $800 and, in any event, Mr. Sack should have provided his rates for the last five years. Navient cites a Central District case, *Flores v. Life Ins. Co. of N. Am.*, where the court awarded an hourly rate of $800 to a twenty-year ERISA attorney.[13] No. 8:20-cv-00897-DOC-JDE, 2022 WL 1577708, at *3 (C.D. Cal. Mar. 18, 2022). The plaintiff provides declarations to support the rate and cites other cases in this district with similar hourly rates. The court awards the $1,200 rate, the actual rate that Mr. Sack bills clients.

The district court determines a reasonable hourly rate based on the "experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). This task is "inherently difficult." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). To assist with the determination, the court looks to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers*,

---

[13] Opp'n – ECF No. 119 at 8–10.

ORDER – No. 20-cv-05920-LB          6

796 F.2d at 1210–11. This community is typically that in which the district court sits. *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). But in some cases, the court may look outside of the forum community for rates if local counsel is unavailable "either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (adopting the reasoning of other circuit courts for considering out-of-district rates).

The burden is on the fee applicant to show that his or her fee is in line with prevailing market rates. *Blum*, 465 U.S. at 895 n.11. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Widrig v. Apfel*, 140 F.3d 1207, 1209–10 (9th Cir. 1998) (declarations by attorneys regarding the prevailing market rate in the community may be enough to establish a reasonable rate in the market).

The plaintiff supported Mr. Sack's hourly rate with appropriate declarations. The Central District case that Navient cites awarded the plaintiff's requested hourly rate. It thus does not really set a benchmark. Other courts in the district have awarded similar hourly rates in ERISA cases. *Wit v. United Behav. Health*, 578 F. Supp. 3d 1060, 1077 (N.D. Cal. 2022) ($1,145 per hour for lawyers with thirty years' experience); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014) (hourly rates up to $1,095).

Also, this case is not just an ERISA case: the ERISA award was largely a math problem that turned on disputes of fact embodied in executive-level employment agreements and executive ERISA compensation packages. The court is familiar with San Francisco hourly rates for lawsuits brought by executives claiming wrongful termination. Mr. Sack's rate is in line with rates charged by comparable lawyers with comparable experience in comparable cases. As for the five-year lookback argument, the rate is supportable in part due to the risks that attend representing clients under contingency agreements. In sum, the hourly rate is supported by the declarations, similar cases, and the court's experience.

## 2.2 Reasonable Hours

Navient contends that the time sheets attached to the Muller declaration show block billing and inflated hours that should be reduced by thirty percent. The plaintiff responds that this boils down to 123 hours: the difference between the parties' lodestar calculations is Mr. Beryl's $737,580 (that includes an across-the-board reduction in hours) versus Navient's $567,796.55. $120,000 is attributable to Mr. Sack's rate. That leaves $50,000 attributable to 123 hours worked.[14] Those hours are reasonable.

The fee-seeking party has the initial burden to prove the reasonableness of hours expended on the case, using detailed time records documenting completed tasks and time expended. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007). The district court may reduce an award if the documentation is inadequate or if it finds that some of the hours were not reasonably expended, such as those that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433–34. The opposing party then has the burden of challenging the accuracy and reasonableness of the hours charged. *Gates*, 987 F.2d at 1397–98. This must be done by specifically identifying defects or deficiencies in the requested hours; conclusory or unsubstantiated objections are insufficient to warrant a reduction. *Cancio v. Fin. Credit Network, Inc.*, No. C 04-3755 TEH, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005). The court also conducts an independent review of the fees for reasonableness. *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995). The Supreme Court has also observed that "a defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (plurality opinion).

First, regarding alleged block billing, the court reviewed the records and found no instances of billing that "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100 (D. Haw. 2010). The tasks are discrete.

---

[14] Reply – ECF No. 120 at 8–11.

Second, Mr. Muller submitted a declaration establishing why he reviewed documents personally.[15] *S.F. Baykeeper v. W. Bay Sanitary Dist.*, No. C-09-5676 EMC, 2011 WL 6012936, at *9 (N.D. Cal. Dec. 1, 2011) ("[B]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case.") (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

Third, the time spent on the tasks overall was appropriate to the needs of the litigation. *Id.*

Fourth, the so-called administrative work was lawyer work. *Id.*

Fifth, it is not unreasonable for two attorneys to prepare the plaintiff for his deposition. The time was spent appropriately. *Id.*

Sixth, the plaintiff eliminated duplicative entries and did a five-percent across-the-board reduction.

The hours are reasonable.

### 2.3  Multiplier

A multiplier is available under federal and state law. It's more typical for state-law claims because the lodestar does not account for contingency risk. *Ketchum*, 24 Cal. 4th at 1132–34, 1138. As a result, California courts routinely award a multiplier when a plaintiff succeeds on statutory employment claims at trial.[16] In *Wang v. Ehang Holdings Ltd.*, a district court evaluated the *Ketchum* factors and awarded a 1.2 multiplier. No. 20-cv-00569-BLF, 2022 WL 5264647, at *2 (N.D. Cal. Oct. 6, 2022). The court does the same here.

The first factor, the novelty of the case, weighs slightly in favor of a multiplier: this is a case involving executive compensation, and there were employment agreements and broken promises that were more than run-of-the-mill claims for breach of contract, estoppel, withholding of ERISA benefits, and waiting-time penalties.

---

[15] Muller Decl. – ECF No. 120-1 at 3 (¶ 4).

[16] Mot. – ECF No. 114 at 17–18 (collecting cases).

The second factor, counsel's skill, weighs in favor of the multiplier, at least slightly. Mr. Beryl's attorneys — like all attorneys in the case — did an excellent job. Mr. Beryl's trial lawyers tried the case skillfully and obtained a great result for their client.

The third factor, preclusion of other employment, is neutral: the case involved discovery, no motions practice except that that attended trial, and a necessary ramp-up right before trial. But the record does not show preclusion of other opportunities.

The fourth factor, the contingent nature of the fee award, weights in favor of a multiplier.

This case is like *Wang*. The court awards a 1.2 multiplier. $737,580 times 1.2 is $885,096.

### 3. Prejudgment Interest

The court granted in part Navient's motion for judgment as a matter of law and reduced the amount of the Performance Cash Units from $1.3 million to $350,000.[17] The parties must confer and submit an updated calculation within seven days.

### 4. Costs

There are two categories of costs that Navient contests: (1) travel and lodging ($11,929) and (2) electronic-research costs. (It does not contest most of the costs, including costs taxable under 28 U.S.C. § 1920.)

In ERISA cases, a district court may award "reasonable out-of-pocket litigation expenses that would normally be charged to a fee-paying client," even if the costs are not taxable costs under 28 U.S.C. § 1920. *Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006). The plaintiff cites cases in the Central District where courts have awarded travel costs. *Cohen v. v. Aetna Life Ins. Co.*, No. 19-cv-01506, 2021 WL 2070205, at *9 (C.D. Cal. May 18, 2021); *Harlow v. Metro. Life Ins Co.*, 379 F. Supp. 3d 1046, 1060–61 (C.D. Cal. 2019). In the Northern District, courts have awarded travel costs too. *Oldoerp v. Wells Fargo*

---

[17] Order – ECF No. 128.

*& Co. Long Term Disability Plan*, No. 3:08-cv-05278 RS, 2014 WL 2621202, at *8 (N.D. Cal. June 12, 2014) (awarding travel and research costs).

Navient mostly said that travel costs should not be reimbursed because the plaintiff chose to hire New York counsel. Also, one counsel's travel expenses were more expensive than the other's. Finally, it suggests that Mr. Sack's electronic-research expenses make no sense because Mr. Muller did the research.[18] As to the last two points, Mr. Sack's hotel expenses were lower because he went back to New York before the verdict. He also said that he did not bill for his research to avoid duplicate billing, but he incurred the expenses as part of his research.[19]

The costs are reasonable and of the type billed to clients. The court awards the full $32,581.25.

## CONCLUSION

The court awards the hourly rates and the hours billed, applies a 1.2 multiplier, awards the costs, directs the parties to recalculate prejudgment interest within seven days, and directs the parties to submit a proposed form of order within seven days reflecting these amounts.

This disposes of ECF No. 114.

**IT IS SO ORDERED.**

Dated: July 13, 2023

_____
LAUREL BEELER
United States Magistrate Judge

---

[18] Opp'n – ECF No. 119 at 14.

[19] Reply – ECF No. 120 at 13.