UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| LOUIS BERYL, | Case No. 20-cv-05920-LB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS MATTER OF LAW OR NEW TRIAL** |
| v. | |
| NAVIENT CORPORATION, et al., | |
| Defendants. | |

**INTRODUCTION**

Plaintiff Louis Beryl started an online student-lending company called Earnest, Inc. Defendant Navient Corporation — which services and collects private and federal student loans through its subsidiary Navient Solutions LLC — acquired Earnest, Inc. for approximately $155 million and hired Mr. Beryl and his team to run a new Navient Corporation entity called Earnest LLC. After several months, Navient fired Mr. Beryl, who sued Navient for (1) severance pay due to him under an executive-severance plan, in violation of ERISA § 502(a)(1)(B), (2) breach of fiduciary duties for the denial of benefits, in violation of ERISA § 502(a)(3), (3) breach of his employment contract, and (4) waiting-time penalties under the California Labor Code. A jury trial on the breach-of-contract claim resulted in a verdict in Mr. Beryl's favor: the jury found that Navient did not have cause to fire Mr. Beryl. That entitled him to a severance based on his base pay, a bonus based on his base pay, and other benefits in the form of Restricted Stock Units (RSUs) and Performance Cash

Units (PCUs).[1] It also entitled him — as the court determined following a bench trial — to benefits under the ERISA plan and waiting-time penalties.[2]

Navient filed a post-trial motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) (or alternatively for a new trial under Rule 59(a)(1)(A)), raising only the issues of whether the jury's awards of RSUs and PCUs are supported by substantial evidence.[3] The possible awards for the RSUs were $125,000 or $1 million. The possible awards for the PCUs were $350,000 or $1.4 million. The jury awarded the larger amounts.[4] The post-trial issues turn on whether (1) as Navient advances, the employment agreement allows vesting only of PCUs that were granted (resulting in the lower number) and the offer of higher RSUs required board approval, which never happened, or (2) as Mr. Beryl advances, his offer letter provides for the vesting of the PCUs, and the RSUs did not require board approval.[5]

The jury's award of the RSUs is supported by substantial evidence: the jury credited Mr. Beryl's account that he accepted the $1 million offer on January 4, 2018. But its award of PCUs is not: under the plain language of the contract, the PCUs are granted in annual installments. Mr. Beryl is entitled as a matter of law to $350,000 in PCUs.

## STATEMENT

Navient acquired Earnest in November 2017 and entered into a written employment agreement with Mr. Beryl on October 4, 2017. Navient terminated Mr. Beryl's employment on January 24, 2018. The jury found that Navient did not have cause to fire Mr. Beryl. The Employment

---

[1] Verdict – ECF No. 88 at 1–2. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Findings of Fact & Conclusions of Law – ECF No. 107.

[3] Mot. – ECF No. 118.

[4] Verdict – ECF No. 88 at 2.

[5] Mot. – ECF No. 118 at 7–8; Opp'n – ECF No. 122 at 5.

Agreement is Trial Exhibit 1.[6] It provided for grants of RSUs and PCUs. The parties dispute the amounts owed to Mr. Beryl.

### 1.  PCUs

Mr. Beryl was eligible to receive grants of PCUs under a "Long-Term Incentive Plan:"

**Earnest Long-Term Incentive Plan**

> You also will be eligible to receive long-term incentive awards under the Earnest Long-Term Incentive Plan (the "Earnest LTI Plan"), a special program created for certain Earnest leaders that extends through the 2021 calendar year. A new plan will be developed for calendar year 2022 and beyond based on business goals identified before the start of 2022.
>
> Under the Earnest LTI Plan, you will be eligible to receive Performance Cash Units ("PCUs"). A specified percentage of the PCUs granted to you will vest and be settled based on the cumulative performance achieved by Earnest over designated two- and four-year performance periods relative to the weighted performance targets established for each period, as described below. Each vested PCU will entitle you to a cash payment of $1. Because the number of PCUs that ultimately vest will vary depending on actual performance relative to the performance targets, the aggregate cash payment you receive when the PCUs are settled also will vary based on performance. Except as provided below, all vested PCUs will be settled within 60 calendar days following the end of the final performance period.[7]

There were four-year and two-year PCUs.

For the four-year PCUs:

> **Four-Year PCUs**: For four consecutive 12-month performance periods, with the first such performance period beginning on January 1, 2018, you will receive the following award of PCUs:

| Performance Period | Four-Year PCUs |
|---|---|
| 2018 | 150,000 |
| 2019 | 150,000 |
| 2020 | 350,000 |
| 2021 | 350,000 |
| **Total:** | **1,000,000** |

These Four-Year PCUs will be granted as soon as practicable following the start of each 12-month performance period (i.e., January 1st of 2018, 2019, 2020 and

---

[6] Findings of Fact & Conclusions of Law – ECF No. 107 at 2, 4 (summarizing parties' stipulated facts); Trial Ex. 1 – ECF No. 100-1 at 4–18 (Navient-LB 000393–407).

[7] Trial Ex. 1 – ECF No. 100-1 at 6 (Navient-LB 000395).

United States District Court
Northern District of California

2021), provided you remain employed by Earnest (or another Navient-affiliated company) through each grant date. A specific percentage of the total Four-Year PCUs granted to you will vest and be settled based on the amount of cumulative Funded Originations Volume and Pre-Tax Cash Net Income achieved by Earnest in the aggregate over the four consecutive performance periods relative to the weighted performance targets established for each period, as shown on the performance schedule attached as <u>Appendix C</u>.[8]

For the two-year PCUs:

***Two-Year PCUs***: For two consecutive 12-month performance periods, with the first such performance period beginning on January 1, 2018, you will receive the following award of PCUs:

| Performance Period | Two-Year PCUs |
|---|---|
| 2018 | 200,000 |
| 2019 | 200,000 |
| **Total:** | **400,000** |

These Two-Year PCUs will be granted as soon as practicable following the start of each 12-month performance period (i.e., January 1st of 2018 and 2019), provided you remain employed by Earnest (or another Navient-affiliated company) through each grant date. A specific percentage of the total Two-Year PCUs granted to you will vest and be settled based on the amount of cumulative Funded Originations Volume and Pre-Tax Cash Net Income achieved by Earnest in the aggregate over the two consecutive performance periods relative to the weighted performance targets established for each period, as shown on the performance schedule attached as <u>Appendix C</u>.[9]

The agreement describes the requirements for entitlement to payment and the effect of termination of employment:

***General PCUs:*** Except as provided below [reasons that do not apply here], you must remain employed by Earnest (or another Navient-affiliated company) following the end of the final 12-month performance period and through the date on which the PCUs are settled to be entitled to any payment. Except as provided below, if your employment terminates for any reason before the PCUs are settled, you will forfeit your right to receive payment under any then outstanding PCUs.

In the event (x) your employment is terminated by Earnest (or any other Navient-affiliated company) without Cause, . . . in any case before the PCUs are settled upon completion of the final 12-month performance period, your then outstanding PCUs will vest and be settled as follows. Based on the cumulative performance achieved by Earnest from the beginning of the first performance period through the final day of the performance period that ends coincident with or most-recently

---

[8] *Id.* at 6–7 (Navient-LB 000395–96).

[9] *Id.* at 7 (Navient 000396).

preceding your employment termination date, a specified percentage of your then outstanding PCUs will vest and be settled, with the specified percentage determined according to the attached performance schedule attached as <u>Appendix C</u>; provided that, in the event your employment terminates for one of the reasons set forth above prior to the completion of the first 12-month performance period, your then outstanding PCUs will vest and be settled assuming target performance. Except as provided below, any such PCUs shall be settled within 60 calendar days following your employment termination date.[10]

Appendix C sets forth the following schedules for the four-year and two-year performance schedules.[11]

### <u>APPENDIX C</u>

### Earnest Long-Term Incentive Plan

#### Four-Year Performance Schedule

| Performance Criteria | Weight | Performance Targets | | | | |
|---|---|---|---|---|---|---|
| | | **2018** | **2019** | **2020** | **2021** | **2018–21 (weighted)** |
| Funded Originations Volume | 50% | $2.0B | $2.8B | $3.1B | $3.4B | $14.7B |
| Pre-Tax Cash Net Income | 50% | -$42.1M | -$14.1M | $17.3M | $45.7M | $52.5M |

*Cumulative target for each performance criteria, with 2021 target receiving double weight.

Actual performance (Funded Originations Volume and Pre-Tax Cash Net Income) will be calculated in the same manner in which it is calculated under the [New Sub Limited Liability Company Agreement].

A percentage of the Four-Year Performance Cash Units ("PCUs") granted to you will vest and be settled based on the amount of cumulative Funded Originations Volume and Pre-Tax Cash Net Income achieved by Earnest over the 2018–21 performance periods, relative to the weighted cumulative performance targets set forth above. If your employment terminates before the end of the 2021 performance period for one of the reasons set forth in the accompanying letter agreement regarding your continued employment with Earnest, then a percentage of the Four-Year PCUs granted and outstanding will vest and be settled based on the amount of cumulative Funded Originations Volume and Pre-Tax Cash Net Income achieved by Earnest from the beginning of the first performance period through the final day of the performance period that ends coincident with or most recently preceding the recipient's termination date; provided that, in the event your employment terminates for one of the reasons set forth in the accompanying letter prior to the completion of the first

[10] *Id.* at 7 (Navient-LB 000396).

[11] *Id.* at 13–14 (Navient-LB 000402–03)

12-month performance period, your then outstanding Four-Year PCUs will vest and be settled assuming target performance. For example, if your employment terminates due to death or disability in June 2020, you (or your estate) would be paid for all outstanding Four-Year PCUs based on performance in 2018 and 2019 relative to the performance targets for those two years.

**Two-Year Performance Schedule**

| Performance Criteria | Weight | Performance Targets | | |
|---|---|---|---|---|
| | | **2018** | **2019** | **2018–19 (weighted)** |
| Funded Originations Volume | 50% | $2.0B | $2.8B | $7.6B |
| Pre-Tax Cash Net Income | 50% | -$42.1M | -$14.1M | -70.3M |

*Cumulative target for each performance criteria, with 2019 target receiving double weight.

Actual performance (Funded Originations Volume and Pre-Tax Cash Net Income) will be calculated in the same manner in which it is calculated under the [New Sub Limited Liability Company Agreement].

A percentage of the Two-Year PCUs granted to you will vest and be settled based on the amount of cumulative Funded Originations Volume and Pre-Tax Cash Net Income achieved by Earnest over the 2018–19 performance periods, relative to the weighted cumulative performance targets set forth above. If your employment terminates before the end of the 2019 performance period for one of the reasons set forth in the accompanying letter agreement regarding your continued employment with Earnest, then a percentage of the Two-Year PCUs granted and outstanding will vest and be settled based on the amount of cumulative Funded Originations Volume and Pre-Tax Cash Net Income achieved by Earnest from the beginning of the first performance period through the final day of the performance period that ends coincident with or most recently preceding the recipient's termination date; provided that, in the event your employment terminates for one of the reasons set forth in the accompanying letter prior to the completion of the first 12-month performance period, your then outstanding Two-Year PCUs will vest and be settled assuming target performance. For example, if your employment terminates in June 2018 due to death or disability, you (or your estate) would be paid for all outstanding Two-Year PCUs assuming target performance.

**Performance Vesting Schedule**

In the case of both Four-Year PCUs and Two-Year PCUs, the percentage of PCUs that vest and settle will be determined according to the following performance vesting schedule.

| Percentage of Performance Target Achieved | Percentage of PCUs That Vest/Settle |
|---|---|
| 160% or better | 200% |
| 100% | 100% |
| 50% | 50% |
| <50% | 0% |

**2. RSUs**

The agreement said the following in a section titled "New Hire Grant:"

> Subject to your continued employment and following the Closing Date, you will receive
> an equity grant of restricted stock units with a grant value of $125,000. The award will
> be granted within two weeks of the Closing Date — provided you remain employed by
> Earnest, Navient or any Navient-affiliated company through the grant date — and will
> be based upon the closing market price of Navient common stock (NAVI) on the date of
> grant. The award will vest and be settled in three equal installments on the first, second,
> and third anniversaries of the grant date. An agreement detailing your award and vesting
> terms will be provided at the time of grant.[12]

By email dated November 30, 2017, Mr. Beryl's supervisor, Tim Hynes, offered to increase Mr.

Beryl's base salary from $300,000 to $400,000 (without any caveat about board approval) and to

increase the RSUs by $875,000 "(**SUBJECT TO BOARD COMPENSATION COMMITTEE**

**APPROVAL**)" with a three-year vesting period, subject to continued employment with Navient

("same language as in employment letter"), "subject to achieving at least 70% of target originations

and pre-tax cash income."[13] On January 3, 2018, Mr. Hynes told Navient's CEO Jack Remodi that

he told Mr. Beryl that "we needed a yes/no answer on our last offer (Base – $400k, Bonus – 100%,

one-time performance-based RSU grant of $875k, changes to PTCNI language that we previously

provided). He did not provide a firm answer but indicated if we changed the RSU grant to time-

based that could work."[14] Mr. Beryl testified that he met with Mr. Hynes on January 4, 2018, and

accepted the offer.[15] Mr. Hynes testified that Mr. Beryl did not accept the terms.[16]

## STANDARDS OF REVIEW

**1. Motion for Judgment as a Matter of Law**

Before a case is submitted to the jury, a party may move for judgment as a matter of law that

there is no legally sufficient evidence to support the opposing party's claim or defense. Fed. R. Civ.

---

[12] *Id.* at 6 (Navient-LB 000395).

[13] Trial Ex. 26 (Navient-LB 000676–78**)**.

[14] Trial Ex. 30 (Navient-LB 000709).

[15] Beryl Test., RT 10/26/2022 – ECF No. 103 at 13–15 (pp. 122:11–124:3), 30–31 (pp. 139:15–140:6).

[16] Hynes Test., RT 10/28/2022 – ECF No. 105 at 80–82 (pp. 626:15–628:20).

1  P. 50(a). If the court does not grant a Rule 50(a) motion, it is considered to have submitted the action

2  to the jury subject to the court's later deciding the legal questions raised by the motion. Fed. R. Civ.

3  P. 50(b). No later than 28 days after entry of judgment, the movant may file a renewed motion. "In

4  ruling on the renewed motion, the court may (1) allow judgment on the verdict if the jury returned a

5  verdict; (2) order a new trial; or (3) direct the entry of judgment as matter of law." *Id.*

6      Before granting a Rule 50(b) motion, the court must determine that "the evidence, construed in

7  the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that

8  conclusion is contrary to the jury's verdict." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021

9  (9th Cir. 2008). A jury's verdict must be upheld if it is supported by substantial evidence. *Johnson*

10 *v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). Substantial evidence is

11 "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary

12 conclusion" from the same evidence. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1066

13 (9th Cir. 2016) (cleaned up). "Thus, 'although the court should review the record as a whole, it

14 must disregard all evidence favorable to the moving party that the jury is not required to believe,'

15 and may not substitute its view of the evidence for that of the jury." *Johnson*, 251 F.3d at 1227

16 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)) (cleaned up). The

17 court, again, must view all evidence in the light most favorable to the nonmoving party and draw

18 all reasonable inferences in that party's favor. *Reeves*, 530 U.S. at 149–50. Also, the court may not

19 weigh the evidence or assess the credibility of witnesses in determining whether substantial

20 evidence exists to support the verdict. *Id.* at 150.

21

22 **2.  Motion For New Trial**

23     A district court may grant a new trial "for any reason for which a new trial has heretofore been

24 granted in an action at law in federal court." Fed. R. Civ. P. 59(a).

25     Grounds for granting a new trial "include, but are not limited to, claims 'that the verdict is

26 against the weight of the evidence, that the damages are excessive, or that, for other reasons, the

27 trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir.

28 2007) (quoting *Montgomery Ward & Co. v. Dunan*, 311 U.S. 243, 251 (1940)). "'[T]he trial court

United States District Court
Northern District of California

1   may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based

2   upon false or perjurious evidence, or to prevent a miscarriage of justice.'" *Id.* (quoting *Passantino*

3   *v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)). A trial court's

4   determination that the verdict is not against the clear weight of the evidence is upheld unless there

5   is an "absolute absence of evidence to support the jury's verdict." *Lam v. City of San Jose*, 869

6   F.3d 1077, 1084 (9th Cir. 2017) (cleaned up). That said, "the district court, in considering a Rule

7   59 motion for new trial, is not required to view the trial evidence in the light most favorable to the

8   verdict. Instead, the district court can weigh the evidence and assess the credibility of the

9   witnesses. . . . Ultimately, the district court can grant a new trial under Rule 59 on any ground

10  necessary to prevent a miscarriage of justice." *Experience Hendrix L.L.C. v. Hendrixlicensing.com*

11  *Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014).

12                                          **ANALYSIS**

13      The issues are whether substantial evidence supports the jury's award of $1 million in RSUs

14  (as opposed to $125,000) and $1.4 million in PCUs (as opposed to $350,000). Substantial

15  evidence supports the award of RSUs: the jury credited Mr. Beryl's testimony. But as a matter of

16  law, under the contract, he is entitled to $350,000 in PCUs.

17

18  **1.  RSUs**

19      Navient contends that third-party approval — by the Board — was needed for the increased

20  RSUs.[17] Certainly, the initial email in November said that. But by January 3, 2018, Mr. Hynes

21  referenced his demand that Mr. Beryl accept or reject the offer. That summary says nothing about

22  Board approval. Mr. Beryl testified that the next day, he accepted the offer. Mr. Hynes said that Mr.

23  Beryl did not accept the offer. The jury credited Mr. Beryl, not Mr. Hynes. Moreover, Mr. Beryl

24  testified that Board approval was mentioned in the proposal that Mr. Hynes made in November and

25  that Mr. Hynes "changed this proposal almost immediately after this, when we had our next

26

27

28  [17] Mot. – ECF No 118 at 2.

United States District Court
Northern District of California

discussion."[18] Again, the jury credited Mr. Beryl as to the contracting parties' understanding. *Santa Clara-San Benito etc. Elec. Contractors' Ass'n v. Loc. Union No. 332*, 40 Cal. App. 3d 431, 436 (1974) ("When . . . two parties execute a contract with the understanding that the approval of a third party is necessary for the agreement to take effect, the contract is not complete until the third party has approved."). (Navient does not contend that the RSU-provision modification was unenforceable on a ground other than Board approval.) Substantial evidence supports the verdict.

### 2. PCUs

Under the plain language of the contract, Mr. Beryl is entitled only to the PCUs outstanding at the time of his termination: 150,000 four-year PCUs and 200,000 two-year PCUs. The PCUs are "granted as soon as practicable following the start of each 12-month period (i.e., January 1st of 2018, 2019, 2020, and 2021), provided you remain employed by Earnest (or another Navient affiliated entity) through each grant date."[19] The awards are granted in increments. There is a special rule: for a termination without cause in the first twelve-month period, the outstanding PCUs vested and settled.[20]

The plan is a long-term incentive plan that rewards executives if the company meets its goals. Executives have to be employed during the performance periods to receive the benefit of the PCUs. A special rule applied for termination without cause during the first twelve-month period. That allowed the vesting of $350,000. But the contract does not provide for accelerated vesting for ungranted PCUs. In sum, Mr. Beryl's claim of entitlement to an extra $1,050,000 for ungranted PCUs contradicts the plain language of the contract. *Netbula, LLC v. Chordiant Software, Inc.*, No. C 08-00019 JW, 2009 WL 2044693, at *3 (N.D. Cal. July 9, 2009) ("Where the terms of the contract are unambiguous, a court must enforce the contract according to its plain meaning.").

---

[18] Beryl Test., RT 10/26/2022 – ECF No. 103 at 113–114 (pp. 222:20–223:10).
[19] Trial Ex. 1 – ECF No. 100-1 at 6–7 (Navient-LB 000395–96).
[20] *Id.* at 7 (Navient-LB 000396).

ORDER – No. 20-cv-05920-LB          10

United States District Court<br>Northern District of California

### CONCLUSION

The court grants the Rule 50(b) motion in part: Mr. Beryl is entitled to only $350,000 for the PCUs. Substantial evidence supports the jury's award of $1 million in RSUs. This resolves ECF No. 118.

**IT IS SO ORDERED.**

Dated: July 14, 2023

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California